IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ABBEY PEACH, LAUREN BOYER, SABINA ANDERSON, PAUL PRESTARRI, COLE HOWARD, GAUBRIELLE BROWN, ISAAC HOPKINS, ASHLEY LUTZ, SHARNESE WILLIS, BETHANY BAUMANN, and HALEY DEAN, On Behalf of Themselves and All Others Similarly Situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> BLUEGRASS HOSPITALITY GROUP, LLC and BLUEGRASS HOSPITALITY MANAGEMENT, LLC, <br><br> *Defendants*. | CLASS AND COLLECTIVE ACTION <br><br> CASE NO. 3:24-CV-00792 <br><br> JUDGE TRAUGER <br><br> JURY DEMAND |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF RULE 23 CLASS ACTION SETTLEMENT, FOR PAYMENT OF ATTORNEYS' FEES, COSTS, AND EXPENSES, AND FOR ENTRY OF JUDGMENT

On February 6, 2025, this Court entered an Order Granting Rule 23 Class Certification for Settlement Purposes; Preliminarily Approving Rule 23 Class Action Settlement; and Approving Settlement of FLSA Claims (the "Preliminary Approval Order") in this case. (Doc. No. 37).[1] Pursuant to that Order, notice of this settlement was sent to all members of the preliminarily certified Rule 23 Classes. *Id.* at ¶ 1. There were no objections and no exclusions received from class members. *See* Declaration of Makenna Snow ("Snow Decl.") ¶¶ 15-16. This case had excellent participation, with a total of 3,655 Participating Class Members of 7,856 Rule 23 Class members (*i.e.*, 46%) claiming nearly 70% of the settlement funds. *Id.* ¶¶ 18-19.

---

[1] The Court has already approved the Parties' FLSA Settlement, which is not discussed here. Order, ¶ 12 (Doc. No. 44).

Plaintiffs now move this Court for an order granting final approval of the Rule 23 Class Action Settlement; approving the payment of attorneys' fees, costs, and expenses, as well as payment of the costs of settlement administration; and entering final judgment.

## I. BACKGROUND

### A. Prior Proceedings and Background

In briefing the preliminary approval of this action, Plaintiffs provided the Court with a detailed account of the background facts through preliminary approval of the settlement, including: (1) identifying and explaining what claims the settlement resolves; (2) identifying and describing the classes that were preliminarily certified; (3) the scope of the claims released; (4) the monetary terms of the settlement; (5) an explanation of the settlement allocation and its relation to the Rule 23 Class members potential recovery; (6) an overview of the notice and settlement administration procedures; and (7) an account of the parties' hard-fought, arm's-length settlement negotiations. (Doc. No. 36 at PageID#: 271-277). Now notice is complete. Plaintiffs therefore provide the following additional facts regarding the notice process and its results in support of final approval.

### B. CAFA Notice

Defendants' counsel have represented to undersigned counsel that, on February 10, 2025, they provided timely notice of the proposed class action settlement to the appropriate federal and state officials, in compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. *See* Declaration of David Garrison ("Garrison Decl.") ¶ 4. Defendants' counsel have reported to undersigned counsel that they did not receive any responses to the CAFA notice. *Id*.

### C. The Court-Approved Notice was the Best Notice Practicable Under the Circumstances and Satisfies Rule 23(c) and (e).

On March 6, 2025, the Settlement Administrator under the Settlement, ILYM, Inc. ("ILYM"), issued the Court-approved settlement Notice and Claim Form to the Rule 23 Class

2

members via U.S. Mail, e-mail, and Short Message Service (SMS) text in accordance with this Court's February 6, 2025, Order. *See* Snow Decl. ¶¶ 8-12. The notice was sent to 7,408 individuals provided in the Class List. Snow Decl. ¶¶ 5-6, 8. This notice communicated clearly and concisely all of the aspects and facts of the case and the settlement as required under Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure to the Rule 23 Class members in plain, easily understood language. The deadline to submit claim forms, to request exclusion, or to object was June 4, 2025. *Id.* ¶¶ 15-16.

On April 7, 2025, the Settlement Administrator issued Notice Packets—via U.S. mail, email, and SMS text message—to an addition 448 individual who were inadvertently left off of the original Class List. *Id.* ¶ 9. This increased the over all class and collective size to 7,856. *Id.*

This notice and notice procedure was ***effective***. A total of 1,019 mailed Notice Packets were returned by the United States Postal Service as undeliverable, and 3 Class Members contacted ILYM to request the Notice be remailed to them (for a total of 1,022). *Id.* ¶¶ 10-11. ILYM then performed a standard skip-trace procedure and was able to re-mail an additional 503 Notice Packets for whom an updated address was located. *Id.* After this procedure, 516 mailed Notices remained undeliverable. *Id.* ¶ 12. Only 200 emailed Notices were undeliverable, and only 619 SMS text messages were undeliverable. *Id.* ¶ 13.

In short, this was the best notice practicable under the circumstances and provided all Rule 23 Class members desiring to object to the Settlement or exclude themselves with fair and adequate notice of its terms and of the Fairness Hearing scheduled for July 21, 2025 at 11:00 a.m.

**D. The Reaction of Absent Class Members was Overwhelmingly Positive with No Objections or Exclusions and Exceptional Participation.**

There were no objections and no requests for exclusion made by any class member. *Id.* ¶¶ 15-16. As importantly, 3,655 of Participating Class Members (or 46%) total Rule 23 class

3

members have claimed a total of nearly 70% of the available settlement funds (or nearly 70%). *Id.* ¶¶ 18-19. In other words, the response of the Rule 23 Class members was overwhelmingly positive and indicative of a strong response rate.[2]

## II. LAW AND ARGUMENT

### A. The Settlement is fair, reasonable, and adequate.

There is a strong federal policy encouraging settlement of class actions. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 371-72 (S.D. Ohio 2006); *see also UAW, et al. v. General Motors Corp.*, 497 F. 3d 615, 632 (6th Cir. 2007); *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979); *Airline Stewards & Stewardesses Assoc. v. American Airlines, Inc.*, 573 F.2d 960, 963 (7th Cir. 1978). "Before a district court approves a settlement, it must find that the settlement is 'fair, reasonable, and adequate.'" *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *2 (S.D. Ohio July 11, 2014) (Black, J.) (quoting *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11–cv1061, 2013 WL 2295880, at *4 (S.D. Ohio May 24, 2013); *see Satterly v. Airstream, Inc.*, No. 3:19-CV-107, 2020 WL 6536342, at *4 (S.D. Ohio Sept. 25, 2020) (stating the same). If a court finds that the settlement is fair, reasonable, and adequate, approval of the settlement is appropriate. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. at 381-82.

As Plaintiffs noted in their preliminary approval briefing, the Sixth Circuit has stated the factors to be balanced when evaluating the fairness and reasonableness of a settlement: "(1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the

---

[2] *See* Andrew Brundsen, Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts, Berkeley J. Emp. & Lab. L., 269, Volume 29 (2008) (giving empirical data for twenty-one (21) collective actions and finding that the average opt-in participation rate was 15.71%).

4

opinions of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest." *Does 1-2 v. Déjà vu Services, Inc.*, 925 F.3d 886, 894 (6th Cir. 2019) (citing *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). "In reviewing a proposed class action settlement, the district court has wide discretion in assessing the weight and applicability of the relevant factors." *Carr*, 2022 WL 501206, at *3-4 (citing *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018)) (internal quotations omitted); *see Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992) (stating the court enjoys wide discretion when weighing and applying the factors used to determine whether a settlement is fair and reasonable).

Plaintiffs provided extensive briefing and argument relating to all of these factors in their memorandum in support of preliminary approval of the settlement, with the exception of the sixth factor, the reaction of absent class members, which could only be addressed following the Court-approved notice. (Doc. No. 36 at PageID#: 286-289). Plaintiffs also briefed the allocation of settlement funds, explaining in detail how that allocation equitably distributes settlement funds to the Rule 23 Class members. (*Id.* at PageID#: 274-275). Finally, Plaintiffs have already provided detailed briefing of the reasonableness of the service payments to the class representatives. (*Id.* at PageID#: 290-292).

Through the Court-approved notice process, the Rule 23 Class members have had an opportunity to consider the provisions of the settlement (including the payment of the preliminarily approved service payments to the class representatives, of settlement administration expenses, and of attorneys' fees, costs, and expenses) and to submit a claim, request exclusion, or object. Now, with notice complete, Plaintiffs are in a position to provide the Court with information regarding

5

the reaction of absent class members.

"The Court must also consider the reaction of the absent class members." *Satterly*, 2020 WL 6536342, at *7 (citing *Wright*, 2018 WL 3966253 at *5). However, the fact that some class members object to a settlement does not by itself prevent a court from approving the settlement. *See Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991). Here, there were no objections and no exclusions from over 7,000 class members, and 3,576 of 7,856 total Rule 23 class members have claimed nearly 70% of the available settlement funds were claimed. *See id.* ¶¶ 18, 19. Thus, this factor—and overwhelmingly positive reaction to the settlement—supports approval.

### B. The agreed-upon payment of Plaintiffs' attorneys' fees, costs, and expenses should be approved.

Under the terms of the parties' Settlement, Defendants will pay $9,000,000.00 as a common fund. *See* Settl. ¶ II, U. The Settlement provides that Plaintiffs may petition the Court for payment of one-third (1/3) of the common settlement fund for their attorneys' fees, plus reimbursement of their actual out of pocket costs and expenses. *See id.* ¶ IX, A. Plaintiffs seek approval of $3,000,000.00, which is one-third (1/3) of the common fund, as payment for their attorneys' fees, and payment of $43,998.44 for their incurred costs and expenses to date.

The FLSA, as well as the state laws at issue, provide for the payment of attorneys' fees and costs to Plaintiffs who recover unpaid wages and other damages. 29 U.S.C. § 26(b); KRS 337.385; Mo. Rev. Stat. §§ 290.500, *et seq.*; 820 ILCS § 105/1, *et seq.*; and I.C. § 22-2-5-1, *et seq*. Moreover, "[d]istrict courts may award reasonable attorneys' fees and expenses from the settlement of a class action upon motion under Fed. R. Civ. P. 54(d)(2) and 23(h)." *Swigart*, 2014 WL 3447947, at *5 (citation omitted). When assessing a request for fees, the district court performs "a two-part analysis." *Id.* (citing *In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 760 (S.D.

6

Ohio 2007)). The court first determines whether to calculate the attorneys' fees using "either the percentage of the fund approach or the lodestar approach." *Id.* (citing *In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d at 760). Then, the court analyzes and weights the so-called *Ramey* factors. *Id.* (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974)).

1. **The Court should adopt the percentage-of-the-fund method.**

Class Counsel's efforts resulted in the creation of a $9,000,000 common fund. Courts favor awarding fees from a common fund based on "a percentage of the fund bestowed on the class." *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 124-25 (1885); *Greenough*, 105 U.S. at 532; *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165- 66 (1939).

District courts in this Circuit, including this Court, apply the percentage method, endorsed by the Sixth Circuit in *Rawlings v. Prudential-Bache Propsl, Inc.,* 9 F.3d 513, 517 (6th Cir. 1993), in awarding fees in common fund cases,[3] recognizing that "the percentage-of-the-fund approach

---

[3] *Barbee v. Navihealth, Inc.*, No. :19-cv-00119, 2020 WL 6365515 (M.D. Tenn. Sept. 21, 2020) (Crenshaw, J.) (using percentage of fund approach to award fees in wage-and-hour class and collective action); *Jackson Cnty. Emps.' Ret. Sys. v. Ghosn*, No. 3:18-cv-01368, ECF 267 at ¶3 (M.D. Tenn. Oct. 7, 2022) (Campbell, J.) (Ex. 1) (using "'percentage-of-recovery'" to award class counsel fees in §10b-5 case); *Cosby v. KPMG LLP*, 2022 WL 4129703, at *2 (E.D. Tenn. July 12, 2022) (finding the percentage-of-the-fund approach "the preferred method where, as here, 'a substantial common fund has been established for the benefit of class members through the efforts of class counsel'"); *Stein v. U.S. Xpress Enters., Inc.*, No. 1:19-cv-98, ECF 248 at ¶3 (E.D. Tenn. July 12, 2023) (Ex. 2) (using "'percentage-of-recovery'" to award class counsel fees in securities case); *Grae v. Corrs. Corp. of Am.*, 2021 WL 5234966, at *1 (M.D. Tenn. Nov. 8, 2021) (same); *Burges v. BancorpSouth, Inc.*, No. 3:14-cv-01564, ECF 265 at ¶3 (M.D. Tenn. Sept. 21, 2018) (Ex. 3) (same); *Schuh v. HCA Holdings, Inc.*, 2016 WL 10570957, at *1 (M.D. Tenn. Apr. 14, 2016) (same); *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, 2015 WL 13647397, at *1 (M.D. Tenn. Jan. 16, 2015) (same); *N. Port Firefighters' Pension-Loc. Option Plan v. Fushi Copperweld, Inc.*, No. 3:11-cv-00595, ECF 143 at ¶3 (M.D. Tenn. May 12, 2014) (Ex. 4) (same); *Winslow v. BancorpSouth, Inc.*, No. 3:10-cv-00463, ECF 103 at ¶3 (M.D. Tenn. Oct. 31, 2012) (Ex. 5) (same); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) ("The Court recognizes that the trend in 'common fund cases has been toward use of the percentage method.'"); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013) ("The percentage-of-the-fund method, however, clearly appears to have become

7

more accurately reflects the result achieved [and] . . . has the virtue of reducing the incentive for plaintiffs' attorneys to over-litigate or 'churn' cases." *Skelaxin*, 2014 WL 2946459, at *1.[4] The percentage-of-the-fund method also "affords the Court greater flexibility in assuring that Counsel are adequately compensated for the results that they have achieved and the work that they have done, while also protecting the Class' interest in the fund." *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1280 (S.D. Ohio 1996), *aff'd*, 102 F.3d 777 (6th Cir. 1996).

### 2. The requested fee is consistent with awards approved in similar cases.

In selecting an appropriate percentage award, the Supreme Court recognizes that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *Mo. v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of one-third of the recovery. *Blum*, 465 U.S. at 903 n* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.").

District courts throughout Tennessee often approve percentage awards of one-third of the settlement amount, holding such an award is "'certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit.'" *Cosby*, 2022 WL 4129703, at *2;

---

the preferred method in common fund cases."); *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

[4] The Sixth Circuit is not alone in its adoption of the percentage approach. *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 301 (1st Cir. 1995); *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991).

*see also Barbee v. Navihealth, Inc.*, No. :19-cv-00119, 2020 WL 6365515 (M.D. Tenn. Sept. 21, 2020) (Crenshaw, J.) (approving 33.33% of wage-and-hour class and collective common-fund settlement); *Jackson Cnty. Emps.*, ECF 267 at ¶3 (Ex. 1) (awarding 33-1/3%, plus expenses); *Grae*, 2021 WL 5234966, at *1 (awarding 33-1/3%, plus expenses); *BancorpSouth*, ECF 265 at ¶3 (Ex. 3) (awarding 33-1/3%, plus expenses); *Skeete v. Republic Schs. Nashville*, No. 3:16-cv-00043, ECF 105, ECF 112 at ¶14 (M.D. Tenn. Feb. 26, 2018) (Ex. 6) (approving 33-1/3% fee, plus expenses); *Schuh*, 2016 WL 10570957, at *1 (awarding 30% of $215 million settlement, plus expenses); *Skelaxin*, 2014 WL 2946459, at *1 ("The Court finds that the requested counsel fee of [33-1/3% of $73 million recovery] is fair and reasonable and fully justified. The Court finds it is within the range of fees ordinarily awarded.").[5] The fee award requested here is consistent with such awards.

### 3. The fee is reasonable under the circumstances.

The touchstone of an appropriate fee award in common fund cases is whether the award is reasonable under the circumstances. *See Rawlings*, 9 F.3d at 517. The Sixth Circuit grants a district court "'considerable latitude of discretion on the subject, since it has far better means of knowing

---

[5] *See also Hutchinson v. Fast Pace Medical Clinic PLLC*, No. 3:22-cv-00511, 2024 WL 4634055, at *2 (M.D. Tenn. Oct. 30, 2024) (Campbell, J.) (approving 32% fee in wage-and-hour class and collective common-fund settlement); *Winslow*, ECF 103 at ¶3 (Ex. 5) (awarding 30% of settlement, plus expenses); *Beach v. Healthways Inc.*, No. 3:08-cv-00569, ECF 252 at ¶3 (M.D. Tenn. Sept. 27, 2010) (Ex. 7) (awarding 30% of settlement, plus expenses); *In re Direct Gen. Corp. Sec. Litig.*, No. 3:05-cv-0077, ECF 290 at ¶3 (M.D. Tenn. July 20, 2007) (Ex. 8) (awarding 30% of settlement, plus expenses); *Thacker*, 695 F. Supp. 2d at 528 (awarding 30% of settlement and explaining "[u]sing the percentage approach, courts in this jurisdiction and beyond have regularly determined that 30% fee awards are reasonable"); *In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*, 2009 WL 1473975, at *3 (S.D. Ohio May 27, 2009) (concluding 30% of the settlement amount was "within the percentage range that courts have awarded in securities class action settlements in the Sixth Circuit"); *Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944, at *29 (M.D. Tenn. Aug. 11, 1999) ("[T]hroughout the Sixth Circuit, attorneys' fees in class actions have ranged from 20%-50%.").

what is just and reasonable than an appellate court.'" *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). In determining the reasonableness of attorneys' fees, the Sixth Circuit over the years has identified several relevant factors that district courts "[o]ften, but by no means invariably," consider. *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009). These factors include:

> "(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides."

*Id.*; *see also Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983); *Denney v. Phillips & Buttorff Corp.*, 331 F.2d 249, 251 (6th Cir. 1964) (describing relevant considerations as "the complexity of the legal questions involved, the results accomplished, the professional standing of [counsel], and the professional standing of [defendants'] lawyers," the effort expended, and the public policy aspect of the case). Here, the circumstances support the requested fee award.

**(1) The value of the benefits achieved.** The value conferred on the Rule 23 Class members is considerable, both in the aggregate and individually. Plaintiffs have previously explained, in support of preliminary approval, that this settlement confers substantial benefits on Rule 23 Class members. The common fund negotiated on behalf of the class is equal to roughly one-third (1/3) of the maximum amount of tip-credit wage damages they could have recovered under the FLSA's three-year statute of limitations and, where applicable, more generous state statute of limitations. This settlement yields an average recovery of more than $1,150.00 per person, including their recovery of fees and expenses. (Doc. No. 36 at PageID#: 275). And, just as in *Swigart*, "the settlement provides relatively early relief to class members, and it eliminates the

additional risks the parties would otherwise bear if this litigation were to continue." *Swigart*, 2014 WL 3447947, at *6. And, as in *Swigart*, "[a]bsent settlement, the parties would have engaged in extensive discovery (including written discovery and multiple depositions), and contested class certification, FLSA collective decertification, and dispositive motions on merits and damages issues." *Id.* In short, the value of the benefit conferred is substantial.

**(2) Public policy considerations.** As this Court has noted, "[s]ociety's stake in rewarding attorneys who bring class action wage and hour cases favors the requested award." *Id.* (citing *Gentrup v. Renovo Servs., LLC*, No. 1:07–cv–430, 2011 WL 2532922, at *4 (S.D. Ohio, June 24, 2011). In fact, society's interest in the settlement of wage-and-hour class and collective actions more broadly supports rewarding attorneys. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982); *accord Crawford v. Lexington-Fayette Urban Cty. Gov't*, 2008 WL 4724499, at *9 (E.D. Ky. Oct. 23, 2008) ("Given the uncertainty surrounding a possible trial in this matter, the certainty and finality that comes with settlement also weighs in favor of a ruling approving the agreement" since "such a ruling promotes the public's interest in encouraging settlement of litigation.").

The policy favoring the settlement of collective and/or class actions applies with particular force here. "Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming." *Daoust, et al. v. Maru Restaurant, LLC, et al.*, 2019 WL 2866490 at *2 (E.D. Mich., July 3, 2019). In short, "society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters." *Gentrup*, 2011 WL

2532922, at *4.

**(3) The contingent nature of the fee.** Plaintiffs' counsel undertook this litigation on a contingency fee basis, agreeing to front the considerable costs certain to be incurred in such a sizable FLSA and state law wage-and-hour class and collective action case. Garrison Decl. ¶ 7; Declaration of C. Ryan Morgan ("Morgan Decl.") ¶ 11; Declaration of Jordan Richards ("Richards Decl.") ¶ 10. As such, Plaintiffs' counsel risked receiving no reimbursement for the costs they incurred and the time expended for their services in the event counsel did not prevail. *Id.* Unlike counsel for Defendants, Plaintiffs' counsel have received no compensation for their work on behalf of the Plaintiffs and potential Plaintiffs over the course of this litigation. *Id.*

Courts have also consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See e.g., Willix v. Healthfirst, Inc.,* 2 2011 WL 754862, at *7 (E.D.N.Y. Feb 18, 2011) (finding that where class counsel took on contingency risk of non-payment, a percentage-of-recovery fee award of 33.33% was "presumptively reasonable."). Thus, the award of fees Plaintiffs seek here is entirely appropriate given the outstanding results obtained and contingent risk undertaken by Class Counsel. *See Friske v. Bonnier Corporation*, 2019 WL 5265324, at *2 (E.D. Mich. Oct. 17, 2019) ("The percentage of the fund method is appropriate here for evaluating the reasonableness of the attorney fee since the result achieved for the class in terms of the cash payments to be made from the fund was substantial, and class counsel undertook the representation on a contingent fee basis and advanced significant labor and expenses to litigate the case. And the percentage award requested is appropriate to compensate class counsel adequately for the risk inherent in that contingent fee representation."); *Barbee v. Navihelath, Inc.*, No. 3:19-cv-00119, 2020 WL 6365515, at *1 (M.D. Tenn. Sept. 21, 2020) (awarding fees equal to 33.33% of the total settlement value). The contingent

nature of the representation supports the reasonable fee sought here.

**(4) The diligent prosecution of the litigation.** Class Counsel secured this settlement resulted after extensive investigation into Defendants' practices spanning seven states and more than 30 restaurants. This settlement was the result of the prosecution of 7 class and/or collective actions in six different forums. And, it was the result of months of negotiations.

**(5) This complexity of the litigation.** This litigation was complex. It involved class claims under four distinct state statutes, FLSA collective action claims, and, until their consolidation in this Court, were pending in six different federal jurisdictions in seven different actions. While the claims under each of the five applicable statutory regimes were similar, there were several differences that had to be and were accounted for, including, for example: differing substantive legal requirements, differing statutes of limitations; differing non-wage damages; and differing minimum wage rates. "Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart*, 2014 WL 3447947, at *7. As the *Swigart* court noted, this is "particularly true," where the plaintiffs brought both FLSA and Ohio state law claims. *Id.* Here, there are claims under four different states' laws. Thus, just as in *Swigart*, "[r]esolving the procedural issues, the merits, and damages would have been risky, costly, and time consuming." *Id.* Thus, "the litigation was difficult and complex, and this factor weighs in favor of awarding the requested fees." *Id.*

**(6) The quality of the representation.** As Plaintiffs briefed in detail in support of preliminary approval, Plaintiffs' counsel have extensive experience litigating wage-and-hour class and collective actions under state and federal laws and are skilled litigators in this area. (Doc. No. 36 at PageID#: 282-284). In short, the skill and standing of Plaintiffs' counsel is substantial. This factor favors approval of the requested fees.

The quality of opposing counsel is also important when the court evaluates the services rendered by plaintiffs' counsel. *See In re Delphi Corp. Sec., Derivative, & "ERISA" Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008) ("The ability of [Class] Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested."). Defendants were represented by extremely capable attorneys from Littler Mendelson, P.C., with reputations for vigorous advocacy in the defense of complex wage-and-hour class and collective action cases. The ability of Class Counsel to obtain a favorable result for the Class in the face of such formidable opposition further evidences the quality of its work.

**(7) Class member reaction.** "The Class's reaction to the requested fee award is also important evidence of the fairness and reasonableness of the fee request." *Delphi*, 248 F.R.D. at 504; *In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *14 (S.D. Ohio Aug. 19, 2009) ("The reaction of the Class [only one objection out of nearly 125,000 individual notices sent] also supports the requested fee and expense award.").[6] Of course, even a small number of objections by class members is evidence that the requested fee is fair given "[t]he Class's overwhelming favorable response." *Delphi*, 248 F.R.D. at 504. However, in this case, there have been no objections to the settlement, and no exclusions.

There can be no dispute that all of the factors discussed above weigh in favor of the requested fee award.

**C. The payment of Plaintiffs' costs and expenses should be approved.**

Here, Plaintiffs' counsel have incurred costs and expenses totaling $43,998.44 for the benefit of the Rule 23 Class members. Garrison Decl. ¶ 6; Morgan Decl. ¶ 11; Richard Decl. ¶ 14.

---

[6] *See also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 534 (E.D. Mich. 2003) ("absence of objection is remarkable," particularly among "sophisticated" class members, and such a favorable response lends further support" to conclusion that requested fee is reasonable and fair).

14

The payment of these costs is appropriate under Rule 23(h) as well as under the fee and cost provisions of each of the relevant statutes. These reimbursable costs and expenses were reasonably incurred in order to prosecute this case on behalf of the Rule 23 Class members and in connection with reaching the present negotiated resolution of those claims. *Id.* These costs were necessary to prosecute Plaintiffs' claims, and they were necessary to allocate the settlement proceeds. *Id.* In short, payment of these costs and expenses should be approved, because the relief provided by the settlement would not have been achieved without these necessary expenditures. *See McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 668 (N.D. Ohio 2023) (approving "expenses necessary for the claim's prosecution and settlement"); *Swigart*, 2014 WL 3447947, at *7 (approving $39,406.46 in costs and expenses).

### D. The Court should approve the payment of the costs of settlement administration from the common fund.

The Court preliminarily approved payment of the costs of settlement administration on February 6, 2025. Order, ¶ 8 (Doc. No. 37). ILYM's costs total $47,851.50 to administer the settlement. Snow Decl. ¶ 21. These costs are for the benefit of the class and should be approved. *E.g.*, *Barbee*, 2020 WL 6365515, at *1 (approving settlement administration costs); *Hutchinson*, 2024 WL 4634055, at *7 (same); *McKnight*, 655 F. Supp. 3d at 668 (same).

### III. CONCLUSION

For these reasons, this Court should **GRANT** Plaintiffs' Unopposed Motion for Final Approval of Rule 23 Class Action Settlement, for Payment of Attorneys' Fees, Costs, and Expenses, and for Entry of Judgment.

Date: July 7, 2025   Respectfully submitted,

/s/ David W. Garrison
**DAVID W. GARRISON, (TN Bar No. 24968)**
**JOSHUA A. FRANK, (TN Bar No. 33294)**
**NICOLE A. CHANIN, (TN Bar No. 40239)**

15

BARRETT JOHNSTON MARTIN & GARRISON, PLLC
200 31st Avenue North
Nashville, TN 37203
Telephone: (615) 244-2202
dgarrison@barrettjohnston.com
jfrank@barrettjohnston.com
nchanin@barrettjohnston.com

**C. RYAN MORGAN, (FL Bar No. 0015527) ***
MORGAN & MORGAN, P.A.
20 N. Orange Ave., 15th Floor
Orlando, FL 32802-4979
Telephone: (407) 420-1414
rmorgan@forthepeople.com

**JORDAN RICHARDS (FL Bar No. 108372) ***
USA EMPLOYMENT LAWYERS –
JORDAN RICHARDS PLLC
1800 SE 10th Ave., Suite 205
Fort Lauderdale, FL 33316
jordan@jordanrichardspllc.com

* Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs*

16

# CERTIFICATE OF SERVICE

I hereby certify that a copy of this *Memorandum in Support of Plaintiffs' Unopposed Motion for Final Approval of Rule 23 Class Action Settlement, for Payment of Attorneys' Fees, Costs, and Expenses, and for Entry of Judgment* was filed electronically with the Clerk's office by using the CM/ECF system and served on the following counsel for Defendants as listed below on July 7, 2025.

**J. Christopher Anderson**
LITTLER MENDELSON, P.C.
333 Commerce Street, Suite 1450
Nashville, Tennessee 37201
Telephone: 615.383.3033
Facsimile: 615.383.3323
chrisanderson@littler.com

**David B. Jordan**
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX 77010.3031
Telephone: 713.951.9400
djordan@littler.com

**Pierre-Joseph Noebes**
LITTLER MENDELSON, P.C.
3424 Peachtree Road N.E., Suite 1200
Atlanta, GA 30326.1127
Telephone: 404.233.0330
pnoebes@littler.com

**Sarah Doty**
LITTLER MENDELSON, P.C.
111 Monument Circle, Suite 702
Indianapolis, IN 46204
Telephone: 317.287.3600
sdoty@littler.com

*Attorneys for Defendants*

                                              /s/ David W. Garrison
                                              DAVID W. GARRISON